# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Oscar Eligio Amaya,

                      Petitioner,

v.

Kevin Raycraft, Immigration and
Customs Enforcement, Detroit
Field Office, Field Office Director of
Enforcement and Removal
Operations, *et al.*

                      Respondents.

Case No. 25-13539

Judith E. Levy
United States District Judge

Mag. Judge Curtis Ivy, Jr.

_____/

## ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS [1], DISMISSING SEVERAL RESPONDENTS, GRANTING THE MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF [9], ORDERING RESPONDENT TO PROVIDE PETITIONER WITH A BOND HEARING OR OTHERWISE RELEASE HIM, AND ORDERING RESPONDENT TO PROVIDE <u>A STATUS REPORT</u>

Before the Court is Oscar Eligio Amaya's combined petition for a writ of habeas corpus and complaint for declaratory and injunctive relief (ECF No. 1), and the American Civil Liberties Union of Michigan's ("ACLU") motion for leave to file an amicus curiae brief. (ECF No. 9.) Petitioner states that he is being detained without a bond hearing in

violation of the Immigration and Nationality Act ("INA") and that his detention without a bond hearing violates his right to due process.

For the reasons set forth below, Petitioner's habeas petition and the ACLU's motion are granted.

## I.    Background

Petitioner is a 40-year-old citizen of El Salvador who has lived in the United States since approximately 2007. (ECF No. 1, PageID.9.) Before he was detained, Petitioner lived in Ypsilanti, Michigan, and has a wife and children who are U.S. citizens. (*Id.* at PageID.10–11.) Petitioner does not have a criminal history. (*Id.* at PageID.10.)

On October 14, 2025, Petitioner was working as a roofing laborer in Marysville, Michigan. (*Id.* at PageID.2; ECF No. 1-2, PageID.38.) United States Immigration and Customs Enforcement ("ICE") and/or Customs and Border Protection ("CBP") agents "received intel originating from the Marysville Sector Intelligence Division that a vehicle with registration belonging to an illegal alien" was spotted at Petitioner's worksite. (*Id.*) The agents approached the worksite and spoke with Petitioner, who "was determined to be illegally present without admission or parole" and "freely admitted to crossing the US Border with Mexico near Arizona

2

approximately 18 years ago." (*Id.*) Petitioner was detained and ultimately incarcerated at the Calhoun County Jail in Battle Creek, Michigan. (ECF No. 1-4, PageID.42.)

On October 14, 2025, the Department of Homeland Security ("DHS") initiated immigration removal proceedings against Petitioner in Detroit Immigration Court. (ECF No. 1-1.) Petitioner was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. (*Id.*) The Notice to Appear states that Petitioner was subject to removal pursuant to:

> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

(ECF No. 1-1, PageID.31.)

 Respondents believe that Petitioner is subject to mandatory detention, i.e., detention without a bond hearing, under 8 U.S.C. §

1225(b)(2). (ECF No. 7, PageID.97–98; ECF No. 1-3.) Respondents also argue that the Court lacks jurisdiction over the Petition and the case should be transferred to the Western District of Michigan. (ECF No. 7, PageID.99; *see also* ECF No. 12.)

## II.  The ACLU's Motion for Leave to File an Amicus Curiae Brief (ECF No. 9)

The Court first addresses the ACLU's motion for leave to file an amicus curiae brief. (ECF No. 9.)

### A. Legal Standard

An amicus curiae is traditionally a non-party that becomes involved in a judicial proceeding to assist a court by providing information. *United States v. State of Mich.*, 940 F.2d 143, 164 (6th Cir. 1991). "Its [initial] purpose was to provide *impartial* information on matters of law about which there was doubt, especially in matters of public interest." *Id.* (emphasis in original) (internal citations omitted). "Over the years, however, some courts have departed from the orthodoxy of amicus curiae as an impartial friend of the court and have recognized a *very limited* adversary support of given issues through brief and/or oral argument." *Id.* at 165 (emphasis in original) (internal citations omitted).

4

"[A]micus has been consistently precluded from . . . participating and assuming control of the controversy in a totally adversarial fashion." *Id.* (internal citations omitted). "Amicus . . . has never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest" or of an intervening party under Federal Rule of Civil Procedure 24. *Id.*; *see also id.* at 166 ("Only a named party or an intervening real party in interest is entitled to litigate on the merits . . . ." (internal citations omitted)).

"[P]articipation as an amicus to brief and argue as a friend of the court" is "a privilege within the sound discretion of the courts." *Id.* at 165 (internal quotation marks and citations omitted). The decision to allow amicus participation "depend[s] upon a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *Id.* (internal citation omitted).

### B. Analysis

The ACLU seeks leave to file an amicus curiae brief to address Respondents' argument that the Court does not have jurisdiction over this case and that the only proper Respondent is the warden of the Calhoun County Jail, pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426

(2004). (ECF No. 9, PageID.155.) The Court finds that the arguments offered by the ACLU are timely and useful in deciding the issues currently before the Court, and, as such, grants leave to the ACLU to file its amicus curiae brief.

Respondents submitted a response in opposition to the ACLU's motion for leave to file an amici curiae brief. (ECF No. 12.) Respondents first argue that the ACLU is "not a proper amicus participant" because it is "not a neutral third party" and "may not circumvent the rules regarding intervention of interested parties by wearing the mask of an amicus." (*Id.* at PageID.253 (citing *State of Mich.*, 940 F.2d at 164–166).) The Court reassures Respondents that the ACLU's role in this litigation will be limited, and that this Order does not grant the ACLU the "full litigating status of a named party or a real party in interest." *State of Mich.*, 940 F.2d at 165. While it is true the ACLU's brief is submitted in support of Petitioner, such a viewpoint is permitted in an amicus brief. *See* 16AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3975 (5th ed. 2024) ("There is nothing wrong, in current practice, with an amicus possessing an interest in the relevant issues. The notion

6

of the amicus as 'impartial' became 'outdated long ago.'" (citing *Neonatology Associates, P.A.*, 293 F.3d at 131)).

Respondents also argue that the ACLU's brief includes arguments "beyond the scope of the Court's review" and "addresses numerous additional cases and raises numerous arguments that were not addressed by petitioner." (ECF No. 12, PageID.254 (citing *Cellnet Commc'ns, Inc. v. F.C.C.*, 149 F.3d 429, 443 (6th Cir. 1998)).) The Court disagrees. The ACLU's brief does not raise new issues but "augment[s]" Petitioner's position that the Court has jurisdiction over the case and that Petitioner named the proper Respondent. *See Shoemaker v. City of Howell*, 795 F.3d 553, 562 (6th Cir. 2015) (stating that amici may "augment[]" the arguments of the litigants or "amici would essentially serve no purpose whatsoever").

Additionally, Respondents claim that "the participation of the ACLU as amicus is unnecessary" because Petitioner is represented by competent counsel. (ECF No. 12, PageID.254.) The Court is not convinced that leave to file an amicus brief should only be granted in situations where a party's counsel is deficient. *See, e.g., Newcomb v. Allergy & ENT Assocs. of Middle Tennessee, P.C.*, No. 3:10-CV-1230, 2013 WL 3976627,

at *1 (M.D. Tenn. Aug. 2, 2013) (granting leave to file an amicus brief because of the amicus' interest in the outcome of the case and because of the amicus' unique information or perspective, and explicitly declining to determine whether the party is competently represented).

Finally, Respondents contend that the "ACLU's reason for seeking to intervene in this case is unwarranted" because the ACLU's reasoning is "misguided." (ECF No. 12, PageID.254–255.) To the extent Respondents argue that the ACLU's brief should not be permitted because of the merits of the ACLU's arguments, the Court declines to follow Respondents' reasoning. An amicus brief that, after further consideration, "turns out to be unhelpful" may "simply [be] disregard[ed]" by the Court. *See Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J.).

Accordingly, the Court grants the ACLU's motion for leave to file an amicus curiae brief. The ACLU's involvement in this case is limited to filing the proposed amici curiae brief. (ECF No. 9.) The ACLU may not submit additional briefing or participate further in this suit (such as in oral argument) without requesting and obtaining leave from the Court.

### III.   The Habeas Petition (ECF No. 1)

#### A. Legal Standard

The Court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 2443, the Court, when evaluating an application for a writ of habeas corpus, "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant . . . is not entitled thereto."

#### B. Jurisdiction

The Court must first address Respondents' jurisdictional challenge based on *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). According to Respondents, "under *Padilla*, the only proper respondent is the warden of the Calhoun County Jail, who is not named in this case, and jurisdiction for this case is only proper in the Western District of Michigan," despite the Sixth Circuit's decision in *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003). (ECF No. 7, PageID.98–99 (citing *Padilla*, 542 U.S. at 435; *Aguilar v. Dunbar*, No. 25-CV-12831, 2025 WL 3281540 (E.D. Mich. Nov. 13, 2025)); *see also* ECF No. 12, PageID.255–264.)

In *Roman*, the Sixth Circuit held that "a detained alien filing a habeas corpus petition should generally name as a respondent the person exercising daily control over his affairs," which *Roman* determined is "the INS District Director for the district where he is being detained." *Roman*, 340 F.3d at 320–322. Respondents argue that the Sixth Circuit's decision in *Roman v. Ashcroft*, is "directly contrary" to *Padilla* and, thus, is no longer good law. (ECF No. 12, PageID.259.) Respondents urge the Court to follow *Aguilar*'s decision to transfer the case to the Western District of Michigan for lack of jurisdiction.

The Court disagrees and does not find that *Padilla* and *Roman* are fundamentally incompatible. As recognized by several other district courts, *Padilla* "explicitly left open the question of 'whether [a remote supervisory official] is a proper respondent to a habeas petition filed by an alien detained pending deportation.'" *Kadagan v. Raycraft*, No. 25-13602, 2025 WL 3268895, at *2 (E.D. Mich. Nov. 24, 2025) (quoting *Padilla*, 542 U.S. at 435 n.8); *Hango v. McAleenan*, No. 1:19-CV-606, 2019 WL 6695829, at *2 (N.D. Ohio Dec. 9, 2019).

Further, the Court finds that *Roman*'s reasoning regarding the proper "immediate custodian" still holds. In *Roman*, the Sixth Circuit

reasoned that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners." *Roman*, 340 F.3d at 320 (6th Cir. 2003) (quoting *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998)). Defendant Raycraft, who is the Field Office Director of ICE's Detroit Field Office, fulfills that same role.[1] Importantly, Raycraft's relationship with Petitioner is materially different than the relationship described in *Padilla*:

> The commander of the navy brig in *Padilla* was not a local official who served at the pleasure of and according to the directives of a federal official in charge of a limited territorial district. The attenuated relationship up the military chain of command from the brig to the Secretary of Defense is different in kind from the relationship between a county jail and the Field Office Director of the ICE. In the latter case, the director has sought out and employed the service that it receives, and, indeed, directs, from the local warden. In this case, unlike in *Padilla*, the official with operational control over the confinement of Petitioner is present within the territorial district of this court.

---

[1] "INS 'District Directors' are the same as today's ICE Field Office Directors." *Kadagan*, 2025 WL 3268895, at *2 (citing *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006)).

*Uljic v. Baker*, No. 06-13106, 2006 WL 2811351, at *2 (E.D. Mich. Sept. 28, 2006) (Cleland, J.); *see also Parlak v. Baker*, 374 F. Supp. 2d 551, 558 (E.D. Mich. 2005), *vacated on other grounds sub nom. Parlak v. U.S. Immigr. & Customs Enf't*, No. 05-2003, 2006 WL 3634385 (6th Cir. Apr. 27, 2006); *Naresh v. Klinger*, No. 2:19-CV-12800, 2019 WL 5455469, at *2 n.2 (E.D. Mich. Oct. 24, 2019).[2]

---

[2] Respondents describe their argument as challenging the Court's "territorial jurisdiction," which follows the language used in *Padilla*. (*See, e.g.*, ECF No. 12, PageID.255); *Padilla*, 542 U.S. at 444. However, the Court is unable to conclude that the nature of this challenge is properly that of "territorial jurisdictional," or if it is actually a question of personal jurisdiction or venue.

Regarding *Padilla*, the Court notes that the majority opinion was a 5-4 opinion. Justices Kennedy and O'Connor specified in their concurrence that, "the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue." This concurrence controls. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds'"); *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016) (stating that a concurrence "technically controls" when it "is the narrowest in support of the judgment").

Further, the Supreme Court in *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025), referenced *Padilla*'s "jurisdictional" requirements when determining the correct venue for a suit challenging the validity of confinement and prospective removal from the United States under the Alien Enemies Act of 1798. *See id.* ("For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.' [ ] *Padilla*, 542 U.S. 426, 443 [ ] (2004). The detainees are confined in Texas, so venue is improper in the District of Columbia."). However, it is unclear to what extent *J. G. G.* applies to Petitioner's challenge, as Petitioner does not challenge his prospective removal from the United States, nor does *J. G. G.* clarify the proper "custodian" in an

For the reasons set forth above, Respondents' jurisdictional challenge is rejected.

## C. The Proper Respondents

Petitioner has named as Respondents (1) ICE Field Office Director Kevin Raycraft, (2) Secretary of DHS Kristi Noem, (3) DHS, (4) the United States Attorney General Pamela Bondi, and (5) the Executive Office for Immigration Review ("EOIR"). (ECF No. 1.) Respondents argue, if the Court declines to agree with their jurisdictional challenge, that the only proper respondent in this case is Kevin Raycraft. (ECF No. 7, PageID.98–99.)

Petitioner disagrees and claims that the other Respondents should remain in the case because "Petitioner is not just seeking a writ of habeas corpus, but also declaratory relief, an injunction on transfer, fees and any other just and proper relief." (ECF No. 8, PageID.151–152; *see also* ECF No. 9, PageID.166 n.4.) Petitioner also argues that Respondents Noem, Bondi, DHS, and EOIR are proper Respondents because they are

---

immigration habeas petition. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 449 (6th Cir. 2004) (Sixth Circuit opinion issued after *Padilla*, holding that, generally, "a petition for a writ of habeas corpus is properly filed only in a court that has personal jurisdiction **over the alien's immediate custodian**" (emphasis added)).

13

responsible for his failure to receive a bond hearing, could undertake actions that would release Petitioner, or are the proper respondents with respect to his requested injunction on transfer. (*Id.* at PageID.152.)

Petitioner's showing is deficient and, as such, the Court will dismiss all Respondents except for Kevin Raycraft. The Court finds that the petition did not adequately set forth Petitioner's intent to file a combined habeas petition and complaint for declaratory relief. Further, Petitioner does not cite to authority or provide argument justifying the inclusion of the other Respondents. The Sixth Circuit explained that, generally, the proper respondent to an immigration habeas petition is the immediate custodian—here, the ICE Field Office Director Kevin Raycraft. *Roman*, 340 F.3d at 322. Petitioner does not adequately explain why an injunction on transfer pending resolution of his petition requires Noem and DHS as Respondents. Additionally, Petitioner does not make any showing suggesting that Respondents Noem, Bondi, DHS, or EOIR should remain in the case due to circumstances described in *Roman*.[3]

---

[3] *Roman* acknowledged that the Attorney General may also be a proper respondent under certain circumstances due to "the degree of control which the Attorney General has over an alien's immediate custodian." *Id.* at 324–25. These extraordinary circumstances include if the government "were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326. *Roman*

As such, the Court will dismiss all Respondents except Kevin Raycraft.

### D. Administrative Exhaustion

Respondents ask that the Court require Petitioner to "appeal the immigration judge's denial of his request for release on bond before pursuing his claim in this Court." (ECF No. 7, PageID.101.) Petitioner argues that the Court should waive any administrative exhaustion requirement. (ECF No. 2, PageID.72.)

The parties agree that there is no statute that requires Petitioner to administratively exhaust his claims. As such, "the decision to require exhaustion is within the sound discretion of the court." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

---

suggests that there must be some kind of showing of these extraordinary circumstances in order to keep or add the Attorney General as a respondent. The Sixth Circuit noted that the petitioner in *Roman* "has not alleged facts suggesting either that the government improperly manipulated its authority in an attempt to deny Roman a meaningful opportunity for relief" or that the petitioner faced difficulties such as an inability to know who their immediate custodian is or where the petitioner is being detained. *Id.* at 326. Here, these circumstances have not been demonstrated.

"The Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) (McMillion, J.). Some district courts in the Sixth Circuit have adopted the three-factor test set forth by the Ninth Circuit in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), and have thus required prudential exhaustion when,

> 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 2025 WL 2496379, at *4 (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)). Here, all three factors weigh against requiring administrative exhaustion. "First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record." *Id.* Regarding the second and third factors, it is undisputed that Petitioner "is unlikely to obtain the relief he seeks through the administrative process." (ECF No. 7, PageID.101–102.) As

16

such, requiring Petitioner to go through the administrative process would be fruitless and a waste of time.

Even if these factors weighed in favor of requiring administrative exhaustion, the Court may still waive administrative exhaustion "when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks," or when "delay means hardship." *Lopez-Campos*, 2025 WL 2496379, at *4. Here, it is clear that administrative exhaustion should be waived.

Again, Respondents explicitly acknowledge that futility is applicable here.

> However, the agency acknowledges that Amaya is unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects Amaya's arguments in this case. *See Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile).

(ECF No. 7, PageID.101–102.)

Second, requiring administrative exhaustion would subject Petitioner to hardship. "Bond appeals before the BIA, on average, take

17

six months to complete." *Lopez-Campos*, 2025 WL 2496379, at *5. Requiring Petitioner to remain in custody for that period of time "'would result in the very harm that the bond hearing was designed to prevent,' that is, prolonged detention without due process." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (White, J.) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019)).

Third, "the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges." *Contreras-Cervantes v. Raycraft*, No. 2:25-CV-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025) (McMillion, J.) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)).

Finally, numerous district courts in this district and others have waived administrative exhaustion for petitions with identical circumstances. *Id.* (collecting cases).

Thus, the Court will not require Petitioner to exhaust any administrative remedies.

### E. Petitioner's detention pursuant to the INA (Count I)

Respondents state that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2), which mandates detention. *See* 8 U.S.C. § 1225(b)(2)(A) (stating that "the alien **shall** be detained" (emphasis added)); (ECF No. 7, PageID.102.) Petitioner argues that § 1225(b)(2) does not apply to him, and that his detention is actually governed by 8 U.S.C. § 1226(a), which "allows for release on conditional parole or bond." (ECF No. 1, PageID.4–5.)

Numerous district courts within the Sixth Circuit and throughout the country have held that § 1226(a), not § 1225(b)(2), is the appropriate statute applicable to "noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496379, at *5. These courts reasoned that § 1226(a) governs these petitioners' detention after "reviewing the statutory text, statutory history, congressional intent, and statutory application for the last three decades." *Jimenez Garcia v. Raybon*, No. 2:25-CV-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (DeClerq, J.); *see also Casio-Mejia v. Raycraft*, No. 2:25-CV-13032, 2025 WL 2976737, at *8 n.7 (E.D. Mich. Oct. 21, 2025) (McMillion, J.) (collecting over 30 cases); *see also Gimenez Gonzalez v. Raycraft*, No. 25-

19

CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025); *Morales-Martinez v. Raycraft*, No. 25-CV-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025); *Santos Franco v. Raycraft*, No. 2:25-CV-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); *Sandoval v. Raycraft*, No. 2:25-CV-12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); *Pacheco Mayen v. Raycraft*, No. 2:25-CV-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); *Hernandez Capote v. Secretary of DHS*, No. 25-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); *Contreras-Lomeli v. Raycraft*, No. 2:25-CV-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025).

The Court agrees with the reasoning set forth in these opinions and finds that Petitioner, "who [has] been [in the United States] for years upon years and never proceeded to obtain any form of citizenship (*e.g.* asylum, permanent residency, refugee status, visas, etc.)," is not "seeking" admission as is required by the plain language of § 1225(b)(2)(A). *Lopez-Campos*, 2025 WL 2496379, at *6. Section 1225(b)(2)(A) "requires that an 'examining immigration officer' determine that the noncitizen is 'seeking admission,'" which "was not and could not have been done under the facts and circumstances of this case." *Id.* In short, § 1225(b)(2)(A) "applies to aliens undergoing inspection,

which generally occurs at the United States' border, when they are seeking lawful entry into the United States" and is not applicable to Petitioner. *Jimenez Garcia*, 2025 WL 2976950, at *4 (quoting *Sanchez Alvarez v. Noem*, No. 1:25-CV-1090, 2025 WL 2942648, at *5 (W.D. Mich. Oct. 17, 2025)).

Thus, Petitioner is entitled to a bond hearing pursuant to § 1226(a). Because Petitioner is detained without receiving a bond hearing, he is in custody in violation of federal law.

### F. Fifth Amendment Due Process (Count II)

The Court declines to address Petitioner's Fifth Amendment due process claim at this time because Petitioner's requested relief is granted on the basis of Count I (violation of the INA). *See Jimenez Garcia*, 2025 WL 2976950, at *4. If Respondent Raycraft does not release Petitioner or provide him with a bond determination hearing by December 17, 2025, Petitioner may renew his Fifth Amendment Due Process claim.

### IV.  Conclusion

For the reasons set forth above,

Respondents Secretary of the Department of Homeland Security Kristi Noem, the Department of Homeland Security, the United States

Attorney General Pamela Bondi, and the Executive Office for Immigration Review are DISMISSED;

Petitioner Oscar Eligio Amaya's Petition (ECF No. 1) is GRANTED;

Respondent Raycraft is ORDERED to provide Petitioner with a bond hearing pursuant to § 1226(a) on or before December 17, 2025 or otherwise release him by that same date; and

Respondent Raycraft is ORDERED to file a status report on or before December 19, 2025, certifying that (1) he has complied with this order and that (2) Petitioner was provided a bond hearing on or before December 17, 2025 or otherwise released. Respondent's status report must include the result of the bond hearing, if held.

IT IS SO ORDERED.

Dated: December 9, 2025          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 9, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager

23